[No. B142886. Second Dist., Div. One. Aug. 28, 2001.]

In re the Marriage of R. DAVID and CATHERINE ANN CARLTON.
R. DAVID CARLTON, Appellant, v.
CATHERINE ANN D'ALESSANDRO, Respondent.

**COUNSEL**

R. David Carlton, in pro. per., for Appellant.

No appearance for Respondent.

**OPINION**

**MALLANO, J.**—In this family law case, the husband sought to reduce spousal and child support in connection with a request for custody of one of the children of the marriage. The trial court granted the custody request but increased the husband's support payments based on two factors.

First, the trial court assigned the husband a tax filing status of "married filing jointly." In fact, the husband had remarried, and his tax filing status

was "married filing separately" because his new wife refused to file a joint return. Second, the trial court allocated a tax deduction to the husband based on his new wife's mortgage payments notwithstanding that the property was purchased with her separate funds, the mortgage was in her name only, and she took the entire deduction.

We conclude that the trial court erred in those respects because, in calculating support, the husband's net disposable income should reflect his actual, available tax status and deductions.

## BACKGROUND

In November 1978, David Carlton and Catherine Ann D'Alessandro were married. Two children, a daughter and a son, were born during the marriage. In January 1994, David and Catherine separated. On September 15, 1995, a judgment of dissolution was entered. Catherine was awarded custody of the children.

In early 1996, David was to be remarried. His fiancée, Donna, insisted on a premarital agreement to ensure that she remained the sole owner of her separate property. On January 4, 1996, David and Donna signed a "Premarital Agreement," which provided for the segregation and separate ownership of their respective funds and assets. After they married, Donna was careful to maintain separately her property and finances.

Beginning in 1996, David filed his federal and state tax returns using the status "married filing separately." He could not file a joint return because Donna refused to do so. She wanted to preserve her separate property as contemplated by the Premarital Agreement and viewed the filing of separate returns as in furtherance of that purpose.

In January 1999, Donna purchased a new home. David was not a party to the sales purchase agreement or the loan. His name was on the deed, but, according to Donna, that was done for "inheritance purposes only." Donna made every mortgage payment, using her individual checking account that contained her separate funds. The 1999 Internal Revenue Service form 1098, entitled "Mortgage Interest Statement," showed Donna as the "payer/borrower." On her tax returns, Donna claimed the entire mortgage interest deduction.

In February 2000, David petitioned the trial court to grant him custody of his minor son and to reduce his spousal and child support payments. On May

3, 2000, the trial court awarded David principal custody of his son but increased his support payments.

In determining David's net disposable income, the trial court assigned him a tax filing status of "married filing jointly" despite uncontradicted evidence that his wife would not sign a joint return. In the court's words: "[Y]ou're eligible to file married filing joint, which is the best, and I'm going to take it as married filing joint. If you choose to pay more taxes, that's up to you." In addition, the trial court attributed a $2,000 mortgage interest deduction to David even though his wife, as the sole borrower, took the entire deduction on her own taxes.

David filed a motion to modify the trial court's order, taking issue with the tax filing status and the mortgage deduction. The motion was heard on June 7, 2000, during which the following colloquy occurred:

"The Court: What I did was intentional. It was not a mistake. [¶] You are eligible to take the best possible tax bracket. The fact that you choose not to because of some fear that is contrary to the law, is your doing. [¶] . . . [¶]

"[David]: It was not my fear. My spouse refuses to file jointly. I have no ability to file jointly without my spouse's consent and permission.

"The Court: You are eligible to file jointly and that was an intentional doing."

The trial court denied the motion to modify its prior order. David filed a timely appeal.

## DISCUSSION

■ Because this appeal involves the application of statutory law to undisputed facts, we review the trial court's decision de novo. (*State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1081 [62 Cal.Rptr.2d 178].)

■ " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning." (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515-1516 [73 Cal.Rptr.2d 450], citations omitted.)

## A. *Tax Filing Status*

In applying the statewide uniform guideline on child support (Fam. Code, §§ 4050-4076), "[t]he annual net disposable income of each parent shall be computed by deducting from his or her annual gross income the *actual amounts* attributable to the following items or other items permitted under this article: [¶] . . . The state and federal income tax liability resulting from the parties' taxable income. Federal and state income tax deductions shall bear *an accurate relationship to the tax status of the parties* (that is, single, married, *married filing separately*, or head of household) and number of dependents. State and federal income taxes shall be those *actually payable* (not necessarily current withholding) after considering appropriate filing status, all available exclusions, deductions, and credits." (Fam. Code, § 4059, subd. (a), italics added.)

 Because Donna would not agree to file a joint tax return, David had no choice but to file his return as "married filing separately." Under the plain meaning of the statute, the trial court should have used the tax status of "married filing separately" because it reflected the "actual amount" of David's taxes as well as the taxes "actually payable." A joint return was not an available alternative for him.

With respect to joint tax returns, federal law provides some guidance on the subject. In general, "[a] husband and wife may elect to make a joint return . . . ." (26 C.F.R. § 1.6013-1(a)(1) (2001).) But a "joint return of a husband and wife (if not made by an agent of one or both spouses) shall be *signed by both spouses*." (*Id.*, § 1.6013-1(a)(2), italics added.)

As explained in an Internal Revenue Service publication: "[Y]ou can choose **married filing jointly** as your filing status if you are married and *both you and your spouse agree* to file a joint return. On a joint return, you report your combined income and deduct your combined allowable expenses. [¶] If you and your spouse decide to file a joint return, your tax may be lower than your combined tax for the other filing statuses." (Dept. of the Treasury, Internal Revenue Service, Publication No. 17 (1999) ch. 2, p. 18, col. 3, boldface and first italics in original.)

 As the United States Court of Claims stated decades ago: "[T]he filing of a joint return creates a joint 'taxable unit' at least to the extent that it is to the advantage of one of the spouses to create such a unit.

"Such a joint return cannot be effectively made against the will of either spouse. The statute requires either a return by each, or a joint return, and, of

course, if a wife made a separate return, as she would have a right to do, her husband's attempt to make a joint return, in order to take advantage of deductions she might be entitled to, would not be permitted." (*Moore v. United States* (Ct.Cl. 1941) 37 F.Supp. 136, 139-140.)

■ In short, Donna would not agree to file a joint return. Her decision dictated David's filing status: married filing separately. Accordingly, the trial court should have used David's actual tax status in calculating support.

B. *Mortgage Deduction*

■ In determining tax liability, "income tax deductions *shall* bear an *accurate relationship* to the *tax status* of the parties." (Fam. Code, § 4059, subd. (a), italics added.) Donna took the entire deduction for mortgage interest because she made all of the mortgage payments, drawing on her separate funds. Consequently, the deduction was not available to David. (See *Reliable Incubator & Brooder Co. v. Commissioner* (1946) 6 T.C. 919, 929; *Ilfeld Co. v. Hernandez* (1934) 292 U.S. 62, 68 [54 S.Ct. 596, 598-599, 78 L.Ed. 1127]; see also *Brashear v. U.S.* (N.D.Tex. 2001) 138 F.Supp.2d 786, 795.)

Family Code section 4057.5 supports our conclusion. It states, as pertinent here, "[t]he income of the obligor parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support . . . ." (Fam. Code, § 4057.5, subd. (a)(1).) If the trial court could not consider Donna's income in determining David's support obligations, it could not consider a tax deduction that would affect her income and hers only. It follows that Donna's mortgage interest deduction should not have been factored into David's support payments.

In closing, we note that, in determining spousal and child support, a trial court must consider a number of circumstances. (See, e.g., Fam. Code, §§ 4320, 4050-4075.) Because the trial court in this case must redetermine support, we think it best to vacate the order on appeal so that the trial court can consider anew all appropriate factors.

DISPOSITION

The trial court's order regarding spousal and child support is vacated. On remand, the trial court shall redetermine appellant's spousal and child support obligations by (1) using his actual tax filing status, (2) excluding the

mortgage interest deduction to which his wife is solely entitled, and (3) considering any other appropriate factors. Appellant is entitled to costs on appeal.

Spencer, P. J., and Ortega, J., concurred.