[No. A112661. First Dist., Div. Two. Aug. 21, 2006.]

MICHAEL RAY, Plaintiff and Appellant, v.
BARBARA GOODMAN et al., Defendants and Respondents.

84

COUNSEL

Andrew J. Kopp for Plaintiff and Appellant.

Simoncini & Associates, Kenneth Simoncini and Marilyn Winters for Defendants and Respondents.

OPINION

HAERLE, J.—

## I. INTRODUCTION

Appellant, who won a jury verdict of over $900,000 in a personal injury action against the respondent property owners, appeals from a postjudgment order of the trial court awarding him prejudgment interest from the date of his second, not his first, Code of Civil Procedure section 998 (section 998) settlement offer to respondents. He claims this order is inconsistent with the language of Civil Code section 3291 (section 3291) and, further, that several cases expressly holding that only the last section 998 offer is valid are inapplicable to the facts of this case. We agree and hence reverse the trial court's order.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to his complaint filed in October 2002, a little less than a year earlier appellant was injured when he fell on a "dangerous stairway" attached to property owned by the respondents. His complaint alleged both premises

---

[1] We do so notwithstanding the fact that this court was advised, a few days before oral argument, that the parties had agreed to settle the case. We were subsequently presented with a motion by appellant to dismiss this appeal, a motion which we denied because we concluded that the issue presented, being essentially a matter of first impression, deserved a published opinion.

liability and general negligence and named as defendants the owners of the property, then Barbara Goodman and her husband, Richard Goodman.

On December 2, 2003, while the case was pending, appellant served section 998 offers offering to settle the case for $400,000 from each defendant. Two days later, the defendants issued and served their own joint section 998 offer offering to settle the case for $20,001. None of these offers were accepted and hence all were rejected by operation of law. (See § 998, subd. (b)(2).)

On March 14, 2004, defendant Richard Goodman died. Appellant thereafter filed an amendment to his complaint substituting the Estate of Richard Goodman as a defendant in lieu of Richard Goodman.

On May 11, 2004, appellant served a second section 998 offer on both defendants, i.e., Barbara Goodman and the Estate of Richard Goodman, for a total amount of $400,000. On October 1, 2004, respondents issued their second section 998 offer for $75,001. Again, neither offer was accepted and hence expired by operation of law.

The case went to trial before a jury in October 2004. On October 28, 2004, the jury returned a verdict in favor of appellant for $919,102. Judgment was entered in his favor for this amount "plus statutory costs and prejudgment interest" on November 12, 2004.

Appellant filed a memorandum of costs on December 1, 2004; respondents filed a motion to tax costs 13 days later. The hearing on the latter motion was continued several times and finally occurred on May 26, 2005. At that hearing, the trial court apparently ordered—or at least allowed—the parties to file supplemental briefs concerning the issue (among others) of the date prejudgment interest commenced to accrue under sections 998 and 3291. It then ordered the hearing continued until June 10, 2005.

The parties filed such supplemental briefs. Appellant argued that prejudgment interest commenced to accrue as of the date of his first section 998 offer, i.e., December 2, 2003. Respondents argued that such interest accrued as of the date of appellant's second section 998 offer, May 11, 2004, over five months later.

A further hearing on the motion to tax costs took place, as scheduled, on June 10, 2005, after which the court took the matter under submission. By an order filed October 17, 2005, the trial court agreed with respondents' position and ordered that prejudgment interest accrued from the date of the second plaintiff's section 998 offer, i.e., May 11, 2004, only.

Judgment was entered based on this order on November 29, 2005. Appellant filed a timely notice of appeal from the order granting respondents' motion to tax costs on December 22, 2005.

## III. DISCUSSION

The issue before us is one of first impression: when there are two successive unaccepted section 998 offers tendered by a successful plaintiff in personal injury litigation, and that plaintiff subsequently recovers a judgment in excess of either offer, from the date of which offer does the prejudgment interest awarded pursuant to section 3291 begin to run? That issue turns upon whether the trial court correctly interpreted and applied sections 998 and 3291 and is, therefore, clearly one of law and subject to our independent review. (*Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1997) 60 Cal.App.4th 13, 17 [70 Cal.Rptr.2d 41]; *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th. 382, 389 [95 Cal.Rptr.2d 4] (*Wilson*).)

Appellant's argument is based primarily upon the wording of section 3291, a 1982 statute pertaining strictly to personal injury actions, and which, he contends, mandates that prejudgment interest starts accruing as of the date of the first section 998 offer. He points out that the critical language of section 3291 reads: "If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's *first offer* pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment." (§ 3291, italics added.)

Appellant contends that, by this language, the Legislature intended that prejudgment interest allowed pursuant to section 998 in personal injury actions would be computed from the date of the first section 998 offer tendered by the successful plaintiff, even if such an offer were superseded by others from the same party. In support of this argument, appellant cites some legislative history (of which we have taken judicial notice)[2] from the enactment of what is now section 3291. This legislative history indicates that,

---

[2] Interestingly, the *Wilson* court was asked to take judicial notice of, apparently, this same history, but did not. (See *Wilson, supra,* 72 Cal.App.4th at p. 393, fn. 12.) But that court had what it considered a valid reason for avoiding such: the plaintiff there had *raised* her demand the "second time around" and the judgment she recovered, although greater than her first offer, was less than her second. Thus, and having applied the contract law principles it did, the *Wilson* court concluded that application of section 3291 was not an issue before it. (72 Cal.App.4th at p. 393, fn. 12.)

when what is now section 3291 was making its way through the Legislature in late 1981 as Senate Bill No. 203, the wording of the clause regarding when prejudgment interest would start accruing varied from time to time. One of the initial versions used the term "from the date of the initial offer pursuant to section 998," another talked of the "first offer of compromise," and several legislators suggested changing the wording to make interest start running from the "last offer." As finally presented to Governor Brown in early 1982, however, the legislation read as it does now: "first offer pursuant to Section 998."

For their part, respondents rely on both *Wilson, supra,* 72 Cal.App.4th 382, and two other cases, one decided by this court in 1968 and one decided by one of our sister courts in 2003, to defend the trial court's ruling in this case.

In *Wilson,* our colleagues in the Third District affirmed a trial court's order which denied the winning personal injury action plaintiff both costs (expert witness fees) and prejudgment interest. As did appellant in this case, that plaintiff had, prior to trial, filed and served two successive section 998 offers, the first to settle for $150,000 and the second to settle for $249,000. The jury subsequently awarded her $175,000 in damages. The trial court entered an order granting the losing defendant's motion to tax the expert witness fee component of the winning plaintiff's cost bill and denying her prejudgment interest. It did so because, it ruled, the plaintiff's " 'second CCP § 998 offer in the amount of $249,000 superseded and extinguished Plaintiff's first CCP § 998 offer in the amount of $150,000 for the purposes of both CCP § 998 and Civil Code § 3291.' " (*Wilson, supra,* 72 Cal.App.4th at p. 388.) In affirming this order, the Third District noted, first of all, that by its terms section 998 is "silent as to the effect of a subsequent statutory offer on a prior statutory offer" (*Wilson, supra,* 72 Cal.App.4th at p. 389), but then observed that, in *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273 [204 Cal.Rptr. 143, 682 P.2d 338] (*Cobb*), our Supreme Court had ruled that " 'it is appropriate for contract law principles to govern the offer and acceptance process under section 998.' " (*Wilson, supra,* 72 Cal.App.4th at p. 389, quoting *Cobb, supra,* 36 Cal.3d at p. 280.)[3]

The *Wilson* court then added a second consideration which, it said, reinforced its conclusion that, for section 998 purposes, the only settlement offer which may be compared with the ultimate verdict is the last one: "[T]he

---

[3] The *Wilson* court observed that the specific "question of whether a subsequent statutory offer extinguishes a prior offer" was one which the *Cobb* court had identified as one which could and should be answered by reference to " 'general principles of contract law.' " (*Wilson, supra,* 72 Cal.App.4th at p. 389, quoting *Cobb, supra,* 36 Cal.3d at p. 279.) However, *Cobb* did not involve a subsequent section 998 offer but, rather, the issue of whether a party who had made a section 998 offer could revoke it prior to its acceptance by the offeree; it held that it could.

legislative purpose of section 998 is generally better served by a bright line rule in which the parties know that any judgment will be measured against a single valid statutory offer—i.e., the statutory offer most recently rejected—regardless of offers made earlier in the litigation. [Citation.] Wilson's argument that the proper measure should be her first offer could logically be extended to a rule that a party is entitled to section 998 costs if it does better at trial than it would have under *any* offer made at *anytime* before judgment. While a rule such as that arguably might promote settlement in some cases, its potential for mischief, or at least confusion, is apparent." (*Wilson, supra,* 72 Cal.App.4th at p. 391.)

The *Wilson* court relied heavily on an earlier decision of this court, *Distefano v. Hall* (1968) 263 Cal.App.2d 380 [69 Cal.Rptr. 691] (*Distefano*). There, the offers were made under the predecessor to section 998, Code of Civil Procedure former section 997, and were made by the defendant in the magnitude of, respectively, $20,000 and $10,000. Neither offer was accepted, and the plaintiff recovered damages of $12,559.96, which was an amount in between the defendant's two offers. We held that, under those circumstances, the proffer of the second settlement offer operated to revoke the first offer and that, therefore, the plaintiff was not required to pay the defendant's costs under former section 997. (*Distefano,* at pp. 384–385.) More specifically, we "applied to the statutory offers of compromise the general contract principle that any new offer made prior to a valid acceptance of the prior offer, extinguished the prior one." (*Wilson, supra,* 72 Cal.App.4th at p. 390, summarizing our holding in *Distefano.*)

The *Wilson* and *Distefano* holdings were cited and relied upon most recently in *Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154 [133 Cal.Rptr.2d 339] (*Palmer*). In that case, a plaintiff in a personal injury action had made two section 998 offers prior to trial, the second for $500,000 less than the first. Neither was accepted by the defendants, and the plaintiff recovered far more than either section 998 offer. The trial court found that the plaintiff's second offer was invalid because it was "improperly directed to all defendants 'jointly and severally.' " (*Palmer,* at p. 157.) However, both the trial and appellate courts held, that did not mean the first offer was reinstated, as it was effectively revoked by the very issuance of the second, albeit invalid, offer. The *Palmer* court held: "California law also provides that a prior settlement offer is extinguished by a subsequent settlement offer to the same party. [Citing *Wilson* and *Distefano.*] The trial court properly held that Palmer's July settlement offer to all three defendants, even though defective for purposes of section 998, extinguished her June settlement offer to Schindler." (*Palmer, supra,* at pp. 157–158.)

In response to respondents' reliance on these three cases, appellant notes that none of them address the issue involved here, which is the date from

which prejudgment interest starts running when there are two successive section 998 offers made by a personal injury plaintiff and, as was the case here, the ultimate verdict was in excess of both offers. He is correct: that issue is not discussed or addressed in either *Wilson*, *Distefano*, or *Palmer*. Further, we think he is also correct that the holdings in those cases are not controlling here, and that issues of contract law (i.e., to which offer is the final judgment to be compared or whether there is a valid section 998 offer outstanding to which such a judgment may be compared) are not particularly relevant here.

■ First of all, our decision in *Distefano* cannot be relied upon as a basis for arguing against the computation of prejudgment interest from the date of the first plaintiff's section 998 offer for two reasons: (1) that case was decided 14 years before the enactment of what is now section 3291 and (2) it involved settlement offers by the defendant, not the plaintiff, and an offer by a plaintiff is the only scenario contemplated by section 3291. Nor is *Wilson* controlling because, there, the judgment ultimately rendered was *less* than the plaintiff's second offer, which the court ruled was, under contract law principles, the controlling offer. Thus, per the *Wilson* court, the plaintiff did not satisfy "the prerequisite to the application of section 3291" and thus was "not entitled to recover prejudgment interest."[4] (*Wilson, supra,* 72 Cal.App.4th at p. 393.)

Although the actual outcome of *Palmer* supports respondents' position, we do not regard that case as particularly pertinent because that court's opinion nowhere discusses either the key terms of section 3291 or its overall purpose.[5] In any event, to the extent that *Palmer* is contrary to our holding herein, we simply disagree with it.

---

[4] Indeed, it was on this basis that the *Wilson* court declined to take judicial notice of, presumably, the same legislative history of which we have taken judicial notice here, i.e., she "failed to satisfy the statute's first requirement that she have obtained a judgment more favorable than her section 998 offer." (*Wilson, supra,* 72 Cal.App.4th at p. 393, fn. 12.)

[5] Our research has discovered another case in which, similarly to *Palmer*, the issue of the language and purpose of section 3291 is nowhere discussed but where the outcome is supportive of *appellant's* position here. In *Deocampo v. Ahn* (2002) 101 Cal.App.4th 758 [125 Cal.Rptr.2d 79], the plaintiffs, a husband and wife, made a combined $1 million first section 998 offer, after which the remaining single plaintiff, the husband, made a second section 998 offer for $250,000. (*Deocampo,* at pp. 767, 769, 779, & fn. 12.) He recovered significantly more than either offer in his ultimate judgment. Without even considering whether the second section 998 offer revoked the first such offer, the court ruled that prejudgment interest under section 3291 ran from the date of the first offer. (*Deocampo,* at pp. 779–783.)

Additionally, at least one unpublished appellate decision has addressed this issue and found, as we do here, that, notwithstanding the holdings of *Wilson* and *Palmer*, in a personal injury action governed by section 3291 prejudgment interest should be computed from the date of the plaintiffs' first section 998 offer, not their second (and smaller) such offer.

■ In our view, both the "bright line rule" postulated by *Wilson* and the principle that basic rules of contract law apply are correct as long as the pertinent issue or issues—both there and in *Cobb* and *Distefano*—necessarily involve either contract law or the purpose and function of section 998, e.g.: (1) Does a second section 998 offer from a plaintiff revoke an earlier such offer from the same plaintiff for purposes of that statute? (Answer: yes, per all of those cases.) (2) If that offer is more than the ensuing judgment, but the ensuing judgment is less than the first section 998 offer, is the plaintiff entitled to prejudgment interest? (No, per *Wilson*, because the first offer was revoked by the second, and the "prerequisite" for the triggering of section 998 is thus not met because the ensuing judgment was less than the then-operative second settlement offer made by the plaintiff.)

But this case presents a different set of facts: the judgment received by the plaintiff exceeded *both* of his pretrial section 998 offers, thus clearly triggering prejudgment interest under section 3291. The question of the date from which that interest should be computed when a personal injury plaintiff makes multiple section 998 offers is answered by reference to the clear language of section 3291: from "plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure." (§ 3291.) Put another way, when the issue is whether the benefits of section 998 are available to a plaintiff, the "bright line rule" of *Wilson* controls. But when the issue is the date from which prejudgment interest should be computed in a personal injury case, the controlling rule is found in the just-quoted language of section 3291.

■ Applying that language and computing prejudgment interest from the date of the plaintiff's first section 998 offer does not violate the rule that general principles of contract law should govern which section 998 offers are and are not still effective and when a party may or may not claim the benefits of section 998. Rather, the application of the critical section 3291 language means that, even if a personal injury plaintiff's first section 998 offer is considered "revoked" or "superseded" for purposes of either contract law or the application of section 998, the date of that offer is nevertheless the proper start date for the computation of prejudgment interest.

Aside from the clear language of section 3291, the policy underlying both sections mandates this conclusion. As our Supreme Court has made clear, that policy is the encouragement of the settlement of litigation, and one way those two statutes do that is to encourage the parties to make reasonable settlement offers as early as possible in personal injury litigation. (See *Gourley v. State Farm Mut. Auto Ins. Co.* (1991) 53 Cal.3d 121, 126 [3 Cal.Rptr.2d 666, 822 P.2d 374]; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663 [25 Cal.Rptr.2d 109, 863 P.2d 179]; see also *Hrimnak v. Watkins* (1995) 38 Cal.App.4th 964, 980–981 [45 Cal.Rptr.2d 514].) If prejudgment interest on

behalf of a successful personal injury plaintiff were to run only from that party's *last* section 998 offer, it would necessarily discourage that party from making successive, and lower, section 998 offers, thus significantly reducing the chances of pretrial settlement.

Nor does this result run the risk of encouraging a personal injury plaintiff to make an unreasonably high initial section 998 offer for the sole purpose of, hopefully, starting prejudgment interest running earlier rather than later. This is so because section 3291 expressly allows prejudgment interest only "from the date of the plaintiff's *first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment* . . . ." (§ 3291, italics added.)

## IV. DISPOSITION

The judgment is reversed and cause remanded to the trial court with instructions to amend the judgment to add interest to it at the statutory rate from the date of plaintiff's first section 998 offer to the date of his second such offer. Costs on appeal are awarded to appellant.

Kline, P. J., and Lambden, J., concurred.